APRIL L. HOLLINGSWORTH (Bar No. 9391)
**HOLLINGSWORTH LAW OFFICE, LLC**
40 South 600 East
Salt Lake City, Utah 84102
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
Counsel for Defendant Brannon Morse

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **KIVA ENERGY, INC.,**<br><br>Plaintiff,<br><br>vs.<br><br>**FLASHPOINT ENERGY PARTNERS, LLC and BRANNON MORSE,**<br><br>Defendants. | **DEFENDANT MORSE'S MOTION FOR SUMMARY JUDGMENT AND TO STAY DISCOVERY**<br><br>Case No. 2:24-cv-250-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Defendant Brannon Morse, by and through his undersigned counsel, hereby submits this Motion for Summary Judgment and to Stay Discovery. For the reasons stated herein, this Court should dismiss all of Plaintiff's claims against both Defendants, pursuant to Fed. R. Civ. P. 56. While this Motion is pending, Mr. Morse requests that the Court stay discovery so Defendants are not required to unnecessarily spend significant resources providing information to Kiva, which cannot sustain its burden of proof for any of its claims, as explained below.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..……..3

STATEMENT OF FACTS………………………………………………………….....….…4

LEGAL STANDARD…………………………………………………………………..…7

ARGUMENT…………………………………………………………………………...…7

I. MR. MORSE DOES NOT HAVE A VALID NONCOMPETE WITH KIVA…….7

II. KIVA'S TRADE SECRETS CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW……………………………………………………..…….9

III. DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THIS MOTION…………………………………………………………...…..13

CONCLUSION……………………………………………………………………………..14

## TABLE OF AUTHORITIES

**Cases:**

*Jachim v. KUTV Inc.*, 783 F. Supp. 1328 (D. Utah 1992)……………………………………………7

*Kendrick v. Penske Transp. Services., Inc.,* 220 F.3d 1220 (10th Cir. 2000)………………...……7

*Medspring Group, Inc. v. Feng,* 368 F. Supp. 2d 1270 (D. Utah 2005)……………...…..10, 11, 13

*Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255 (10th Cir. 2020)….7

*Southland Corp. v. Potter,* 760 P.2d 320 (Utah Ct. App. 1988)…………………………...……8

*Storagecraft Technology Corporation v. Symantec Corp.*, Case No. 2:07-CV-856 CW, 2009 WL 112434 (D. Utah Ja16,2009)……………………………………………………………..13

*USA Power, LLC v. PacifiCorp*, 2010 UT 31, 235 P.3d 749……………………………...….9

*USA Power, LLC v. PacifiCorp,* 2016 UT 20, 372 P.3d 629……………………………….…….12

*Vitkus v. Beatrice Co.*, 11 F.3d 1535 (10th Cir. 1993)………………………………..…………7

**Statutes:**

Utah Code Ann. § 13-24-1, et seq. (“UTSA”)…………………………………………9, 11, 12

Utah Code Ann. § 34-51-201(1)……………………………………………………………..8

18 U.S.C. § 1836, et seq. (“DTSA”)………………………………….………….…..…9, 10, 11, 12

**Rules:**

Fed. R. Civ. P. 56……………………………………………………………………………7

## STATEMENT OF FACTS

1. Mr. Morse began working for Kiva Energy ("Kiva") in May 2008 in logistics. Second Amended Complaint, ECF 57, at 7 (¶ 19). Kiva was a wholesale propane supplier. *Id.* at ¶ 9.
2. Mr. Morse was promoted into a sales position at Kiva "[i]n or about July 2009." *Id.* at ¶ 20.
3. Mr. Morse's job as a salesperson for Kiva was to sell propane. Morse Declaration, attached as Exhibit 1. In that role, he knew Kiva's pricing but was not very familiar with its profit margins. *Id.* The pricing and margins changed constantly, with supply and demand. *Id.*
4. Because propane is a commodity, no company in the industry has a secret formula that makes its product better than any other. *Id.*
5. While Mr. Morse worked for Kiva, the company did not offer any products or services that were any different than any other wholesaler. *Id.*
6. The prices offered by all wholesalers in the industry at any given time are generally within $0.01-$0.05 of each other, because prices are based on the cost of local production by refineries and gas plants, plus the cost of freight, and/or weather conditions that affect all the wholesalers equally. *Id.*
7. No wholesaler in the propane industry has any "special sauce." *Id.* Established wholesalers offer the same products and, assuming they have reliable employees and supply, they compete with each other for customers primarily through the tenacity of their salespeople. *Id.*

8. Wholesalers generally make $0.03-$0.05 per gallon of propane gas in the summer, and slightly more in the winter when demand is higher. *Id.*
9. The propane industry prints a yearly directory of propane buyers by state, listing the contact information for the representative for each company, that is available to all propane wholesalers. Ex. 2. Thus, every wholesaler in the industry has the full list of all the customers in the industry.
10. Propane buyers do not generally enter into exclusive or long-term contracts with suppliers. Ex. 1.
11. Mr. Morse enjoyed working for Kiva for many years because he liked his team and the culture of working for a small, privately held company. *Id.*
12. Kiva brought this case ostensibly to enforce an undated "Confidentiality and Non-Compete Agreement with Kiva" that Mr. Morse signed "in or about or after July 2009," as part of his promotion into sales. Second Amended Complaint, ECF 57, at 8 (¶ 27); ECF 57-1.
13. Kiva also had Mr. Morse sign an "Addendum to Confidentiality and Non-Compete Agreement" in 2012 (the "2012 Agreement"), which stated, "by signing below, each Salesperson agrees that they will not call on any active Kiva customer or sell propane out of a supply point that Kiva is buying from for the two year non-compete period as called on in the original Confidentiality and Non-Compete Agreement." ECF 1-3.
14. In March 2022, a Canadian company, Superior Plus Corp., acquired the equity interests of Kiva Energy, Inc. See Press Release, Ex. 3.
15. On November 1, 2022, Mr. Morse began employment with Superior Gas Liquids ("Superior") as the Director of Sales. Ex. 4.

16. Mr. Morse signed an agreement accepting a new position with Superior on November 2, 2022, which set forth his new title, salary, and bonus structure (the "2022 Agreement"). *Id.* The 2022 Agreement provides that Superior's address is in Calgary, Alberta, Canada. The 2022 Agreement did not include a noncompete provision. *Id.* It stated, "All other terms and conditions of your employment will remain unchanged," but did not identify those terms and conditions. *Id.* The 2022 Agreement listed "Conditions of Employment" and "Confidentiality Agreement" as attachments, but Mr. Morse did not receive any attachments to the Agreement. Ex. 1.
17. As Director of Sales for Superior, Mr. Morse was no longer doing direct sales; rather, he was managing salespeople. Ex. 1. In this new role, he did not keep up with Superior's pricing or margins. *Id.* He was not privy to or involved with the contracts Superior had with refiners in that role. *Id.*
18. After Superior took over the company, Mr. Morse no longer enjoyed his job as he had working for Kiva. Ex. 1. The culture changed, some colleagues he enjoyed were gone, all the administration moved to Canada, there were problems with billing customers, and his customers were unhappy with the service and complained to him. Further, he was being criticized for violating protocols that had not been an issue under Kiva. *Id*.
19. Mr. Morse left Superior and began working for Flashpoint as a salesperson in October 2023. Ex. 1. Flashpoint is a smaller company with a culture similar to Kiva's before it was acquired by a much larger company. *Id.*
20. As an employee of Flashpoint, Mr. Morse has sold propane to some of the customers who have also bought propane from Kiva. *Id.*

21. In making sales, Mr. Morse has not used any "trade secrets" of Kiva. *Id.* In fact, he is unaware of any trade secrets that Kiva has. *Id.*

## LEGAL STANDARD

Under Rule 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Jachim v. KUTV Inc*., 783 F. Supp. 1328, 1330 (D. Utah 1992). In applying the summary judgment standard, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Kendrick v. Penske Transp. Services., Inc.,* 220 F.3d 1220, 1225 (10th Cir. 2000). "For there to be a genuine dispute of fact, there must be more than a mere scintilla of evidence." *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (citing *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993), internal quotation marks omitted). Viewing the facts in the light most favorable to Kiva, its claims in this case against both defendants must be dismissed as a matter of law.

## ARGUMENT

### I. MR. MORSE DOES NOT HAVE A VALID NONCOMPETE WITH KIVA

As of November 2022, Mr. Morse was no longer employed by Kiva. He had a new employment agreement with his new employer, Superior, in a new role as Director of Sales. That agreement did not have a noncompete agreement attached. Accordingly, there was no noncompete governing Mr. Morse's employment as Director of Sales to Superior.

To the extent Kiva maintains that the language in the 2022 Agreement stating, "All other terms and conditions of your employment will remain unchanged" incorporates the two-year noncompete he signed with Kiva at least a decade earlier, this is incorrect for several reasons. First, the language is too ambiguous to incorporate multiple agreements that were 10-12 years old, signed with a different company in a different role, particularly given the reference to "Attachments" that were not actually attached and do not list a noncompete agreement. It is basic contract law that "a contract can be enforced by the courts only if the obligations of the parties are set forth with sufficient definiteness that it can be performed." *Southland Corp. v. Potter,* 760 P.2d 320, 322 (Utah Ct. App. 1988). The 2022 Agreement does not contain a definite non-compete provision.

Second, Utah's "Post-employment Restrictions Act" mandates that after May 10, 2016, "an employer and an employee may not enter into a post-employment restrictive covenant for a period of more than one year from the day on which the employee is no longer employed by the employer. A post-employment restrictive covenant that violates this subsection is void." Utah Code Ann. § 34-51-201(1). Therefore, even if the 2022 Agreement was intended to incorporate a two-year noncompete agreement, that agreement would have been void.

Regarding Mr. Morse's obligations to Kiva, those obligations terminated when he was hired into his new role at Superior, because the consideration Kiva promised in exchange for his covenant not to compete—employing Mr. Morse "as a Salesman upon the terms and conditions of" the 2009 Agreement—had been terminated. See ECF 57-1 at 1 ("In exchange for employment or continued employment and other good and valuable consideration, the Company and the Employee agree to the following. . . . The Company employs Employee as a Salesman upon the terms and conditions of this Agreement.") Since Kiva no longer employed Mr. Morse as

a Salesman, Mr. Morse was no longer bound by the restrictive covenant in either the 2009 or 2012 Agreements. And it was clearly not Kiva's intent to hold him to such covenants in his new role with Superior, as it would not make sense to restrict Mr. Morse from conducting business with Kiva's prior customers in his new role as Director of Sales.

For all these reasons, Mr. Morse has no valid noncompete agreement with Kiva (or Superior). Kiva's breach of contract claim must therefore be dismissed as a matter of law.

## II. KIVA'S TRADE SECRETS CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW

Kiva also claims that Mr. Morse has "wrongfully converted and misappropriated Kiva's Trade Secrets," in violation of both the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1, et seq. ("UTSA") and the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq. ("DTSA"). ECF 57 at 2, 16-18. Kiva cannot sustain its burden under either of these Acts because Kiva's cannot show it has any trade secrets, let alone that Mr. Morse misappropriated them in his position with Flashpoint or that Kiva was injured by his misappropriation.

"When undertaking a trade secret analysis, the threshold question is 'whether, in fact, there is a trade secret to be misappropriated.'" *USA Power, LLC v. PacifiCorp*, 2010 UT 31, 235 P.3d 749, 759. The UTSA defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Utah Code Ann. § 13-24-2(4).

The DTSA's definition of a trade secret is similar: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

"The burden is on the plaintiff to prove the existence of a trade secret, and there is no presumption in his favor." *Medspring Group, Inc. v. Feng,* 368 F. Supp. 2d 1270, 1276 (D. Utah 2005). As a wholesaler of propane, Kiva simply does not have a "formula, pattern, compilation, program, device, method, technique, or process, that" is not "generally known" in the industry. All wholesalers of propane sell the same products to customers included in an industry directory, and they base their pricing on the cost of the gas from the refineries. At any given time, all the wholesalers in the industry sell at prices that are within a few pennies of each other. The propane industry is not one in which any company can gain a competitive edge through "trade secrets."

In response to Mr. Morse's interrogatory asking Kiva to identify its trade secrets at issue in this case, Kiva responded by generally describing "Customer Information," "Kiva's Sales Information," and "Kiva's Business Information." See Ex. 5 at 3-4, Response to Interrogatory No. 1. Kiva provides long explanations of these categories, with no specifics whatsoever. In reality, Kiva's "Customer Information" is included in a directory that is provided to all companies in the industry. Its sales information, which Kiva explains as including "pricing information for current customers, customer discounting information, and information on the products and services Kiva provides" does not reflect trade secrets, as all wholesalers base their

pricing on the costs of the gas from refiners; any information about Kiva's past discounting would not be a trade secret and would be irrelevant to future sales because the market prices fluctuate constantly; and Kiva's products and services are the same as any other wholesaler in the propane industry. As for its "Business Information," Kiva does not describe any information that "derives independent economic value, actual or potential, from not being generally known." For instance, Kiva provides no explanation of how its "marketing plans" for selling propane derive economic value from not being known, and this crucial element of a trade secrets claim is not obvious. And even if a company's "marketing plan [is not] generally known, it does not constitute a trade secret if it is 'within the knowledge of the trade.'" *Medspring Group,* 368 F. Supp. 2d at 1278. Here, Kiva sold propane to customers in the industry directory, just like every other wholesaler. It cannot pass "the threshold question" of showing it has any trade secrets that Mr. Morse could have misappropriated.

Kiva also cannot show that Mr. Morse misappropriated anything. The UTSA and DTSA each define "misappropriation" the same way:

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (i) used improper means to acquire knowledge of the trade secret; or
>
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>
> (A) derived from or through a person who had utilized improper means to acquire it;
>
> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Utah Code § 13-24-2(2); 18 U.S.C. § 1839(5).

Here, assuming for the sake of discussion that Kiva can show it had trade secrets, Kiva cannot show that Mr. Morse misappropriated any of them by disclosing them to Flashpoint or using them to sell to customers as a sales rep for Flashpoint. In response to Mr. Morse's interrogatory to Kiva asking it to explain "with specificity" how it alleges Mr. Morse misappropriated its trade secrets, Kiva responded that it believes Mr. Morse failed to return (unspecified) documents containing trade secrets, and makes the conclusory and unsubstantiated claim that because Mr. Morse sells propane for Flashpoint in the same region where he once sold for Kiva, "use and disclosure of Kiva's confidential, proprietary, and trade secret information is inevitable." Ex. 5 at 6-7, Response to Interrogatory No. 3. This is not sufficient to show misappropriation. This Court has held that even if a company has a trade secret, such as a marketing strategy that is not known in the industry, it must show that that trade secret was misappropriated by the defendants to prevail on a trade secrets claim. *Medspring Group,* 368 F. Supp. 2d at 1278. Kiva cannot show Mr. Morse misappropriated its trade secrets by point to its baseless assumption that Mr. Morse must have misappropriated its trade secrets because he was selling propane in the same region.

Finally, it is important that Utah law requires that to meet its burden in a trade secrets case, in addition to showing "the existence of a trade secret," a plaintiff must show "communication of the trade secret . . . under an express or implied agreement limiting disclosure of the secret, and . . . use of the secret that injures" the plaintiff. *USA Power, LLC v. PacifiCorp,* 2016 UT 20, 372 P.3d 629, 630. Kiva cannot meet these elements because, first, as

stated above, Mr. Morse did not have an agreement governing his employment at the time he left Superior other than the 2022 Agreement that did not include either a noncompete or nondisclosure provision. Further, Kiva cannot show that Mr. Morse injured it through use of a trade secret. Kiva essentially claims that because Mr. Morse sold to at least 15 of its customers, Kiva therefore "lost profits exceeding $957,540." Ex. 5 at 7-8, Response to Interrogatory No. 4. But just because Mr. Morse sold propane through Flashpoint to customers that previously bought propane from Kiva does not make each of those sales a loss to Kiva. For example, some customers, like Mr. Morse, might not have liked how Superior operated under its new management. As stated above, Kiva has made no showing that Mr. Morse used its trade secrets to sell to its customers, and without such evidence, it cannot make the requisite showing that that Mr. Morse used its secrets to cause injury to Kiva.

For all these reasons, Kiva's trade secrets claims under both the UTSA and the DTSA should be dismissed as a matter of law.

## III. DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THIS MOTION

In *Storagecraft Technology Corporation v. Symantec Corp.*, the court acknowledged that a plaintiff "is required to identify its claimed trade secret with reasonable particularity before being allowed discovery on that claim." Case No. 2:07-CV-856 CW, 2009 WL 112434, at *2 (D. Utah Jan. 16, 2009). As explained above, Mr. Morse maintains that Kiva cannot identify its trade secrets with particularity and cannot show he had a valid noncompete that he was violating by selling to companies who have also bought propane from Kiva. And yet, Kiva has requested voluminous information from both defendants.

From Mr. Morse, for instance, Kiva has requested all of his communications (texts, emails, etc.) with any representatives from any company Kiva considers to be one of its customers since he started working for Flashpoint and all documents relating to his attempts to sell propane to any of those companies. Ex. 6, Request for Production Nos. 8, 11. This production will require Mr. Morse to spend dozens if not hundreds of hours, for instance, pulling communications from his phone of all his texts with any representative from any company that Kiva claims has been its customer. Similarly, Kiva has requested that Flashpoint provide "All Documents evidencing, reflecting, or relating to Flashpoint's attempts to provide propane sales, storage, or transport services to any Customer [from a list of companies Kiva claims to have done business with] from November 1, 2022 to the present." Ex. 7, Request for Production No. 12.

These requests indicate Kiva is using this litigation as a fishing expedition, which it should not be permitted to do if its claims are baseless, as Mr. Morse argues in this motion is the case. Specifically, Kiva should not get the benefit of seeing all Mr. Morse's texts with customers in the industry, or force Mr. Morse to spend hours pulling such information from his phone, when it cannot sustain a claim that these communications violated a noncompete agreement. Likewise, Flashpoint should not have to produce what will necessarily be significant amounts of information about its efforts to sell propane, if Kiva's claims are found meritless. Accordingly, Mr. Morse (on behalf of both defendants) requests that the Court stay all discovery until this Court determines whether Kiva has any viable claims against either defendant.

## CONCLUSION

Based on the plain language of the 2022 Agreement, Mr. Morse had no noncompete agreement with Kiva as of November 2022, and therefore Kiva's breach of contract claim must

be dismissed. Kiva's trade secrets claims must also be dismissed, because Kiva cannot show it had trade secrets, or that Mr. Morse has used those trade secrets to sell to customers propane in his role at Flashpoint. The court should dismiss Plaintiff's suit in its entirety.

DATED this 1st day of August, 2025.

**HOLLINGSWORTH LAW OFFICE, LLC**

/s/ April L. Hollingsworth
April L. Hollingsworth
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of August, 2025, a copy of **DEFENDANT MORSE'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STAY DISCOVERY** was served, via the court's electronic filing system, on the following:

Ryan C. Wooten
James McQuade
Katie E. Brisco
Frank N. Zalom
ORRICK, HERRINGTON & SUTCLIFFE LLP
rwooten@orrick.com
jmcquade@orrick.com
kbriscoe@orrick.com
fzalom@orrick.com

Liesel Stevens
RAY QUINNEY & NEBEKER P.C.
lstevens@rqn.com

/s/April L. Hollingsworth