IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KIVA UNITED ENERGY,<br><br>Plaintiff,<br><br><br>v.<br><br><br><br>FLASHPOINT ENERGY PARTNERS, LLC;<br>and BRANNON MORSE,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER UNDER RULE 56(d) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:24-cv-00250<br><br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Before the court are Defendant Brannon Morse's Motion for Summary Judgment (ECF No. 89) and the Plaintiff's Motion for an Order Pursuant to Rule 56(d) Denying, or Alternatively, Deferring Defendant Brannon Morse's Motion for Summary Judgment and Allowing Additional Time to Conduct Discovery (ECF No. 119). For the reasons stated below, the court grants the Plaintiff's motion and denies the Defendant's motion.

## BACKGROUND

Plaintiff Kiva United Energy, Inc. (Kiva) is a wholesale propane supplier that delivers propane to retail stores, distributors, or certain end users requiring large quantities of propane. (Second Am. Compl., ECF No. 57 at ¶ 9.) To "maintain[] a competitive edge," Kiva alleges that it relies on confidential and proprietary information and trade secrets, including its "strategic supply contracts with various propane producers, customer lists, customer contracts, sales

1

strategies, supply strategies, pricing methodologies/formulae, hedging and risk exposure strategies, plans and strategies for future growth, and overall strategies for competing against other suppliers."  (Id. ¶ 13.)

Defendant Brannon Morse began working for Kiva in 2008.  (Id. ¶ 19.)  Kiva requires that its salespeople sign time-bound confidentiality, non-solicit, and non-compete agreements. (Id. ¶ 16.)  When Mr. Morse was promoted to his first sales position in 2009, he entered into a Confidentiality and Non-Compete Agreement with Kiva (Confidentiality Agreement).  (Id. ¶ 27.) Ultimately, Mr. Morse became the Director of Sales and Marketing for the United States and Canada.  (Id. ¶ 21.)  Kiva alleges that throughout his employment, Mr. Morse had access to Kiva's confidential and proprietary information and trade secrets.  (Id. ¶ 22.)  Mr. Morse also regularly engaged with Kiva's customers and developed close relationships.  (Id. ¶ 23.)

Superior Plus Corp. (Superior) purchased Kiva in March 2022.  (See Kiva's Opp'n Mot. Summ. J, ECF No. 104 at 14.)  Kiva remains a wholly-owned subsidiary of Services Group, Inc., and an indirect subsidiary of Superior.  (Fed. R. Civ. P. 7.1 Disclosure Statement, ECF No. 12.)

In 2022, Mr. Morse signed an employment agreement (the 2022 Agreement).  (2022 Agreement, ECF No. 89-4.)  It is disputed whether Mr. Morse entered into the 2022 Agreement with Kiva or Superior.  The 2022 Agreement uses Superior's office letter template and states: "I am happy to confirm our offer of employment with Superior Gas Liquids as Director, Sales." (Id.)  At the same time, Mr. Morse's supervisor, Angie Hasenohrl "always represented to Morse that he remained a Kiva employee, Morse always represented himself to customers as a Kiva employee, the signature block on Morse's email continued to state he was a Kiva employee, Morse's email address continued to have a 'kivaunitedenergy.com' domain, and Morse never gave Hasenohrl any indication that he believed he was not a Kiva employee."  (Decl. Angie

2

Hasenohrl, ECF No. 104-2 at ¶ 24.)  The 2022 Agreement does not contain a noncompete provision but states that "[a]ll other terms and conditions of your employment will remain unchanged."  (ECF No. 89-4.)

Defendant Flashpoint Energy Partners, LCC (Flashpoint) is also a propane supplier and competes directly with Kiva.  (Second Am. Compl. ¶ 36.)  On October 13, 2023, Mr. Morse resigned from his position, representing that he would be "doing work for Flashpoint" as a consultant in Oklahoma.  (Id. ¶ 44.)  But Kiva asserts that Mr. Morse remains in Utah and is working with clients in Utah and across the Western United States—much like he did for Kiva— and is in a position to use and disclose Kiva's confidential information and trade secrets.  (Id. ¶ 45.)

Kiva believes that disclosure of Kiva's confidential and proprietary information and trade secrets is "inevitable" in Mr. Morse's new position because such information is "inherently intertwined with the type of work he is doing for Kiva's direct competitor."  (Id. ¶ 46.) Specifically, Kiva alleges that Mr. Morse, on behalf of Flashpoint, has already solicited approximately ninety-five customers he worked with while employed by Kiva and has won business from at least six customers by undercutting Kiva's pricing.  (Id. ¶¶ 47–48.)  According to Kiva, Mr. Morse even misled a former Kiva customer by representing that he, Mr. Morse, still worked for Kiva.  (Id. ¶ 49.)  And Kiva claims it has lost sales of over five million gallons of propane, or $700,000 in profits.  (Id. ¶ 48.)

Kiva brings three claims.  The first claim, against Mr. Morse, is for breach of contract for violations of the Confidentiality Agreement in soliciting Kiva's actual and potential customers, using and disclosing Kiva's confidential and proprietary information, and working for Flashpoint, a direct competitor.  (Id. ¶¶ 57–61.)  Kiva's second claim, against both Defendants, is

for violations of the Uniform Trade Secrets Act (UTSA), Utah Code Ann. §§ 13-24-1, et seq. (Id. ¶¶ 62–69.)  Kiva's third claim, against both Defendants, is for violations of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836.  (Id. ¶¶ 70–77.)

The Defendants have requested that discovery be stayed or have otherwise delayed discovery in this case several times.  First, in October 2024, the Defendants filed a Partial Motion to Dismiss and Joint Motion to Stay Discovery pending resolution of the Motion to Dismiss.  (See ECF Nos. 38–39.)  The court denied the Motion to Dismiss and found that the Motion to Stay was therefore moot.  (See Order Denying Mot. to Dismiss, Dec. 6, 2024, ECF No. 58.)  Next, in December 2024, the Defendants filed a Motion for a Protective Order, requesting to stay discovery pending expert document authentication.  (See ECF No. 67.)  The court denied the Defendants' Motion for a Protective Order.  (See Order, Feb. 18, 2025, ECF No. 72.)  Ultimately, Mr. Morse and Flashpoint agreed to supplement their production August 1, 2025, with text messages and emails regarding Mr. Morse's alleged solicitation of Kiva customers.

But on August 1, 2025, Mr. Morse filed a Motion for Summary Judgment and to Stay Discovery, requesting that the court grant judgment on all of Kiva's claims against both Defendants and stay discovery while the Motion for Summary Judgment is pending.  (ECF No. 89.)  On November 5, 2025, Kiva filed a Motion for an Order Pursuant to Rule 56(d) asking the court to deny or defer a decision on Mr. Morse's motion to allow additional time for discovery.  (ECF No. 119.)  Magistrate Judge Dustin B. Pead denied Mr. Morse's Motion to Stay Discovery on November 21, 2025.  (See Order Denying Mot. to Stay Discovery, Nov. 21, 2025, ECF No. 126.)  And on December 5, 2025, Mr. Morse filed an objection to Magistrate Judge Dustin B. Pead's order denying Mr. Morse's Motion to Stay Discovery.  (ECF No. 131.)

On January 21, 2026, the court heard argument on the pending motions. At that hearing, the court upheld Judge Pead's order denying Mr. Morse's Motion to Stay Discovery over the objection filed by Mr. Morse.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the case. See Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." (Citation omitted).)

Once the movant shows there is an absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Federal Rule of Civil Procedure 56(d) is "designed to safeguard against a premature or improvident grant of summary judgment." Pasternak v. Lear Petroleum Expl., Inc., 790 F.2d 828, 833 (10th Cir. 1986) (citation omitted). Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may 1) "defer considering the motion or deny it;" 2) "allow time to obtain affidavits or declarations or to take discovery;" or 3) "issue any other appropriate order." Fed. R. Civ. P. 56(d).

The "general principle" of Rule 56(d) is "that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Oklahoma ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC, 529 F. App'x 886, 892 (10th Cir. 2013) (quoting Price ex rel. Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000)). At the same time, "seeking to engage in a fishing expedition with the hope of discovering some evidence to save a case from summary judgment is wasteful of the court's time and resources and is not the purpose of Rule 56(d)." Wilcox v. Career Step, LLC, No. 2:08-cv-0998, 2012 WL 5997201, at *2 (D. Utah Nov. 30, 2012) (citation modified).

Rule 56(d) motions "should ordinarily be treated liberally." Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC, 17 F.4th 22, 34 (10th Cir. 2021). But Rule 56(d) "does not operate automatically. Its protections must be invoked and can be applied only if a party satisfies certain requirements." Price, 232 F.3d at 783. In the Tenth Circuit, "a party seeking to defer a ruling on summary judgment under Rule 56([d])[1] must provide an affidavit 'explain[ing] why facts precluding summary judgment cannot be presented.'" Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd., 616 F.3d 1086, 1096 (10th Cir. 2010) (quoting Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992)). This affidavit must identify 1) "the probable facts not available;" 2) "why those facts cannot be presented currently;" 3) "what steps have been taken to obtain these facts;" and 4) "how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." Id. (citation modified).

---

[1] Older cases refer to Rule 56(f) instead of Rule 56(d). Following a 2010 amendment to Rule 56, "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. 56 advisory committee's note (2010). Caselaw regarding the prior Rule 56(f) applies to the current Rule 56(d). See Aragon v. Collings, No. 2:18-cv-00620, 2022 WL 1693785, at *2 n.3 (D. Utah Apr. 25, 2022) (report and recommendation adopted May 26, 2022).

The court "may not look beyond the affidavit in considering a Rule 56(d) request." Cerveny v. Aventis, 855 F.3d 1091, 1110 (10th Cir. 2017) (citation omitted).

## ANALYSIS

Mr. Morse requests that the court enter summary judgment in his favor for two reasons. He first maintains that, as a matter of law, Kiva has failed to show the existence of a trade secret or the misappropriation of any trade secret. (See ECF No. 89 at 9–13.) Second, he argues that he is no longer bound by the Confidentiality Agreement, both because he signed the 2022 Agreement with Superior, not Kiva, and because Utah passed a law in 2016 that prohibited any post-employment restrictive covenants longer than one year. (See id. at 7–9 (citing Utah Code Ann. § 34-51-201(1)).)

### I.    Procedural Issues

As a preliminary matter, the court notes that discovery should have been ongoing while the court resolved the pending motions. Only Mr. Morse filed a motion for summary judgment and a request for stay,[2] and discovery should have proceeded against Flashpoint.

The court also notes that Mr. Morse could have raised his present summary judgment arguments in a motion to dismiss. After Kiva filed its Second Amended Complaint, the court highlighted that "[i]f necessary, Mr. Morse may file a new motion to dismiss in response to the Second Amended Complaint …." (ECF No. 58 at 2.) The Defendants did not file such a motion. And while Mr. Morse cites Kiva's interrogatory responses as evidence in support of his argument that Kiva has failed to show the existence of a trade secret (thereby arguing that the motion is proper as a motion for summary judgment), these responses merely repeat the

---

[2] The court denied Flashpoint's attempt to join Mr. Morse's motion, as such joinder is not allowed under the court's local rules. See DUCivR 7-1(a)(8).

7

allegations in the Second Amended Complaint. (Compare Second Am. Compl. ¶ 14, with Resp. Interrogatory No. 1, ECF No. 89-5 at 3–4.) As a result, the court finds nothing contrary to law about Judge Pead's order denying Mr. Morse's motion to stay discovery, which analyzed Mr. Morse's trade secret argument as a question about the appropriate pleading standard. (See ECF No. 126 at 3 (holding that the normal Rule 8 pleading standard applies to UTSA claims).) In any event, the court finds that Kiva has sufficiently identified its claimed trade secrets at this stage of the litigation.

## II.       Trade Secrets

The UTSA defines a trade secret as

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Utah Code Ann. § 13-24-2(4). The DTSA defines a trade secret similarly,[3] and "[t]he elements of a claim for trade secret misappropriation under the DTSA and UTSA closely resemble each other." Total Quality Sys., Inc. v. Universal Synaptics Corp., 679 F. Supp. 3d 1196, 1210 (D. Utah 2023). Courts consider the following factors when deciding whether information qualifies as a trade secret:

---

[3] The DTSA defines a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in its business; (3) the extent of measurers taken by the business to guard the secrecy of its information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Hanks v. Anderson, No. 2:19-cv-999-DBB-JCB, 2024 WL 4092949, at *11 (D. Utah Sept. 5, 2024) (quoting Bimbo Bakeries USA, Inc. v. Sycamore, 29 F.4th 630, 641 (10th Cir. 2022)).

Here, Kiva claims that its trade secrets include its customer lists, pricing strategies, and specific information about customer needs, such as customers' preferences about communications, deliveries, types of sales and contracts, and future plans. Courts in this district have found that this type of information qualifies as a trade secret. See Hammerton, Inc. v. Heisterman, No. 2:06-cv-00806-TS, 2008 WL 2004327, at *8 (D. Utah May 9, 2008) (quoting Microbiological Research Corp. v. Muna, 625 P.2d 690, 700 (Utah 1981)) ("Customer lists are trade secrets 'where the customers are not known in the trade or are discoverable only by extraordinary efforts.'"); Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc., 584 F.2d 946, 952 (10th Cir. 1978) ("Confidential data regarding operating and pricing policies can also qualify as trade secrets." (Citation omitted)). Whether Mr. Morse used the type of information that would qualify as a trade secret to solicit new customers, whether Kiva adequately protected that information, and whether that information was known outside of the business are all disputed issues of fact that the court cannot resolve at this stage of the litigation.

## III.    Breach of Contract

The court also finds that there are genuine issues of material fact regarding whether Mr. Morse was employed by Kiva or Superior following Superior's acquisition of Kiva in 2022. Relying on language in the 2022 Agreement stating, "I am happy to confirm our offer of

employment with Superior Gas Liquids as Director, Sales," Mr. Morse argues that he was Superior's employee. (ECF No. 116 at 17.) Kiva contends that Mr. Morse remained Kiva's employee even after Superior's acquisition of Kiva in 2022. (ECF No. 104 at 31.) According to Kiva, the use of Superior's office letter template and references to Superior in the 2022 Agreement were "administrative error." (ECF No. 104 at 32.) To support this contention, Kiva points to evidence including that Mr. Morse's supervisor, Angie Hasenohrl, "always represented to Morse that he remained a Kiva employee, Morse always represented himself to customers as a Kiva employee, the signature block on Morse's email continued to state he was a Kiva employee, Morse's email address continued to have a 'kivaunitedenergy.com' domain, and Morse never gave Hasenohrl any indication that he believed he was not a Kiva employee." (ECF No. 104 at 32 (citing Hasenohrl Decl. ¶ 24).)

Moreover, the 2022 Agreement does not make sense as a standalone employment agreement. While the 2022 Agreement covers the start date, base salary, sales incentive, and long-term incentive plan, it does not include any other terms one might expect to find in an employment agreement. (ECF No. 89-4.) Instead, the 2022 Agreement contains language expressly referring to existing employment terms: "[A]ll other terms and conditions of your employment will remain unchanged." (Id.) It makes more sense that such a sparse agreement referring to existing employment terms would be between Mr. Morse and Kiva.

The court is also unpersuaded that the 2022 Agreement either superseded or incorporated the Confidentiality Agreement. "Under Utah law, a subsequent contract replaces the terms of a prior contract when (1) there is an existing valid contract; (2) all parties agreed to a new contract; (3) the new contract extinguishes the prior contract; and, (4) the new contract is valid." Trugreen Companies, L.L.C. v. Scotts Lawn Serv., 508 F. Supp. 2d 937, 950 (D. Utah 2007). In

determining whether new agreements supersede existing agreements, the court looks to whether "the new agreements appear to fully cover the subject areas addressed in the old agreements." Id.  Here, it does not appear that the 2022 Agreement extinguished the prior contract, since the 2022 Agreement expressly states that "all other terms and conditions of your employment will remain unchanged."  (ECF No. 89-4.)  Moreover, the 2022 Agreement does not address confidentiality or nondisclosure.

Similarly, "there is no clear and unequivocal language stating that the intent of the parties was to incorporate terms from the Confidentiality Agreement into the 2022 [Agreement]" and the 2022 Agreement "addresses completely different subjects than the Confidentiality Agreement."  (ECF No. 104 at 34.)  See Jensen v. W. Jordan City, 968 F.3d 1187, 1206–07 (quoting Hous. Auth. of Cnty. of Salt Lake v. Snyder, 44 P.3d 724, 729 (Utah 2002)) ("Generally, for one contract to incorporate the terms of another, 'the reference must be clear and unequivocal.'").  As a result, the court declines to void the Confidentiality Agreement under Utah's "Post-employment Restrictions Act," which mandates that after May 10, 2016, "an employer and an employee may not enter into a post-employment restrictive covenant for a period of more than one year from the day on which the employee is no longer employed by the employer."  Utah Code Ann. § 34-51-201(1).  At this stage of the litigation, the court finds no "clear and unequivocal" indication of the parties' intent to incorporate the Confidentiality Agreement.

### IV.    Rule 56(d) Motion

Kiva urges the court to deny or defer consideration of Mr. Morse's Motion for Summary Judgment because Kiva has been deprived of key testimony and evidence that would aid its opposition.  This motion is mostly moot because the court finds genuine issues of material fact

that preclude the entry of summary judgment.  But to the extent that Mr. Morse argues that Kiva has yet to provide evidence sufficient to satisfy the elements of his trade secrets claim, the court agrees that Kiva's motion for additional discovery is appropriate.  The court also agrees that the declaration from its counsel that Kiva provides in support of its request (the McQuade Declaration) fulfills the conditions for a Rule 56(d) declaration under Tenth Circuit law.  (See Decl. James McQuade, ECF No. 120.)

The first requirement for an affidavit or declaration filed in support of a motion under Rule 56(d) is that it must identify "the probable facts not available." Valley Forge Ins. Co., 616 F.3d at 1096 (quoting Campbell, 962 F.2d at 1522).  The McQuade Declaration sufficiently describes probable facts that are not currently available to Kiva.  In particular, the McQuade Declaration points to text messages, emails, and anticipated depositions that Kiva believes will identify:

> (1) the Kiva customers and specific Kiva customer points of contact with whom Morse communicated; (2) how Morse identified and selected the Kiva customers he solicited; (3) how Morse identified the specific point of contact to solicit within each customer organization; (4) where Morse obtained contact information for each Kiva customer he solicited; (5) how Morse determined the price of the propane he offered to these customers; (6) whether and why Morse believed he would be successful in soliciting these customers and/or whether he believed he would be able to undercut Kiva's pricing; (7) the information that Morse conveyed to these customers while soliciting and selling to them, including but not limited to specific references to Kiva; (8) the structure and terms of Morse's proposed sales to these customers such as sales contract type and duration, volume, and delivery location; (9) Morse's knowledge of the customers' communication preferences, future business plans, customers' price sensitivity, delivery costs, margins, and credit status; and (10) Flashpoint's contemporaneous knowledge of Morse's use of Kiva's trade secret information to solicit Kiva's customers.

(McQuade Decl. ¶ 9.)

Second, the affidavit or declaration must explain "why those facts cannot be presented currently." Valley Forge Ins. Co., 616 F.3d at 1096.  The McQuade Declaration adequately

details Mr. Morse and Flashpoint's refusal to comply with Kiva's discovery requests.  Kiva claims that while Mr. Morse and Flashpoint had previously agreed to provide text messages and emails related to Mr. Morse's solicitation of Kiva's customers, they are now refusing to do so. (See McQuade Decl. ¶ 5.)  Indeed, the McQuade Declaration refers to email correspondence in which counsel states that Flashpoint "intends to see how the Court is going to address the pending issues before proceeding with discovery."  (Email from Tom Askew to Frank Zalom, Aug, 11, 2025, ECF No. 104-1 at 47.)  "The movant's exclusive control of such information is a factor weighing heavily in favor of relief under Rule 56([d])."  Price, 232 F.3d at 783 (citation omitted).  By alleging that Mr. Morse and Flashpoint have control over certain information and are refusing to provide this information until after the court addresses the pending issues, Kiva has adequately explained why it cannot currently present these facts.

Third, the affidavit or declaration must describe "what steps have been taken to obtain these facts."  Valley Forge Ins. Co., 616 F.3d at 1096.  The McQuade Declaration outlines Kiva's efforts to obtain discovery, including Kiva's initial requests for production, an initial meet and confer conversation with counsel for Mr. Morse and Flashpoint regarding discovery, and several Zoom calls and emails with counsel for Mr. Morse and Flashpoint regarding deficiencies in production.  (McQuade Decl. ¶¶ 2, 4, 5.)  The court finds that these attempts satisfy the third requirement.  See United States v. Mountain W. Anesthesia, L.L.C., No. 2:20-cv-00372-TC-CMR, 2023 WL 8456745, at *2 (D. Utah Dec. 6, 2023) (finding the third requirement to be satisfied where the party "sought [the] information in discovery at numerous points").

Finally, the fourth requirement is that the affidavit must explain "'how additional time will enable [the party] to' obtain those facts and rebut the motion for summary judgment." Valley Forge Ins. Co., 616 F.3d at 1096 (quoting Campbell, 962 F.2d at 1522).  Additional time

13

will allow Mr. Morse and Flashpoint to produce discovery in response to Kiva's requests. Since "Kiva is waiting to issue subpoenas on Kiva's former customers that Morse solicited until after Morse produces his communications with them and provides deposition testimony about them," additional time will also allow Kiva to conduct depositions. (McQuade Decl. ¶ 11.) See Mountain W. Anesthesia, 2023 WL 8456745, at *2 (finding the data to be relevant and additional time to be necessary for the Plaintiff to rebut the Defendants' Motion for Summary Judgment where, "[o]nce he obtains the data, [the Plaintiff] plans to begin scheduling depositions, during which he will use the data to guide his questioning of witnesses").

At the hearing on these motions, Kiva's counsel suggested that the issues presented to the court are simply premature, and that the motions should have been presented on a full record after the completion of discovery. The court agrees. The court will not entertain additional piecemeal litigation in this matter. Any further dispositive motions must be filed at the close of discovery so that the court may determine on the basis of a full factual record whether there are any triable issues. The court refers the outstanding discovery motions to Judge Pead to put in place a discovery schedule that allows for the timely resolution of this litigation.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      The Plaintiff's Motion for an Order Pursuant to Rule 56(d) Denying, or Alternatively, Deferring Defendant Brannon Morse's Motion for Summary Judgment and Allowing Additional Time to Conduct Discovery (ECF No. 119) is GRANTED.

2.      The Defendant's Motion for Summary Judgment (ECF No. 89) is DENIED WITHOUT PREJUDICE.

DATED this 17th day of March, 2026.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge